HENGERER v. REYNOLDS ELECTRIC FLASHER MFG. CO.

(Circuit Court of Appeals, Second Circuit. December 15, 1914.)

No. 65.

PATENTS ⬩328—INFRINGEMENT—ELECTRIC DISPLAY LAMP.

The Gille patent, No. 794,296, for an electric display lamp, *held* not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, dismissing a bill for infringement of letters patent No. 794,296, granted July 11, 1905, to H. L. Gille, for an electric display lamp.

The following is the opinion of Learned Hand, District Judge:

This case turns altogether upon the interpretation to be given to the phrases "cap covering the tip end" and "cap fitted to the tip end," contained in claims 1 and 2. If these include what the defendant insists should properly be called a "hood," and if they are valid, then the defendant infringes at least claim 2; otherwise, not. It must be confessed that the natural meaning of the words seem to bear out the defendant; nevertheless, the case is

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

one for interpretation from the general context of the patent and the file wrapper.

The specifications are short, and depend chiefly upon the accompanying diagrams, having no general language. The only description of the "cap" is at line 27, where it refers to the diagram showing a short cap, "shaped to fit over the tip end." Later (lines 51–55) the patentee refers to the shortness of the cap as designed to leave "the bulb intermediate of the cap and the base uncovered, so as to throw unobstructed rays against the display surface upon which the lamps are secured." So far, certainly, the words in question seem to have been deliberately chosen to confine the claims to short caps, because of a supposed advantage which has in fact not been realized in practice.

Furthermore, if we suppose that the patentee in claims 1 and 2 meant to include a cap covering the whole bulb, we must, of course, assume that the "spring device" was to be reversed in practice, which is perhaps an obvious expedient, but which nevertheless is nowhere suggested in the specifications. Moreover, this would weaken the resistance to pulling off, as the arms, 4, 4, would be nearer the greatest diameter of the bulb, and also the resistance to lateral dislocation. Whether it would still be possible adequately to hold on the cap must remain somewhat doubtful.

However, if one considers the claims separately, a different conclusion is suggested. The "short cap" is very definitely described in claim 3 as one terminating between the tip and the greatest diameter. There might be, of course, caps longer than this which did not wholly cover the bulb; but this definition is about the only one which could be stated, except in terms of degree, and it certainly shows that the scrivener had the distinction in mind. Now, if one limits claims 1 and 2 to such caps as are defined in claim 3, they become mere species of claim 3, and necessarily narrower than it. It is contrary to the general practice of patent scriveners to write specific claims in advance of the generic, and especially by omitting a part of the differentia contained in the broadest claim—here claim 3—and merely inserting the distinctive mark of the species; in claim 1, the detachable feature; in claim 2, the flange. The suggestion, therefore, is of a broader use of the word "cap" in these two claims. If we go to the file wrapper, this suggestion is very strongly corroborated, for we find that these claims all took their present form in answer to the citation of Livet, 707,433. Claim 1 avoided Livet by having the spring detachable; claim 2, by having the point of support a flange; claim 3, by having only a "short cap." The intention indicated by reading the claims themselves is much reinforced. It is quite true, on the other hand, that on April 10, 1903, at a time when claim 2 was specifically limited to a "short cap," and claims 1 and 3 were general, the patentee spoke of the invention as including only a "short cap"; but arguments in the office I disregard.

The total upshot of all this would be to leave the matter in some doubt, were it not for the Bilheller patent, 25,653, British 1897, in which appear the two missing elements of Livet, the flange and the detachable support, and which forbids the construction in question. The "flange" takes the same form as in the defendant's hood, assuming that it is a flange, as I believe. The detachable feature is present, more detachable certainly than the defendant's spring device, and still more than Livet's.

Now, this British patent was not discovered in the Patent Office, and no presumption of patentability, therefore, exists respecting it. It is for precisely the same sort of thing that all these patents cover. It answers every feature of claims 1 and 2, unless it be the following: In claim 1, "said device having detachable spring support upon the free edge of the cap;" in claim 2, "said device being supported upon said cap by means of said flange." The spring device in Bilheller, when not detached, is supported by the inside of the bead, just as it is in the defendant's device. When it is detached, it is naturally not supported by the cap at all, in that respect being like every other detachable spring device. There is, indeed, a genuine distinction between the Bilheller device and the defendant's, which in practice would be important: The spring device fastens upon the neck of the bulb by a clamp with a screw, so that, while the cap will slip on and off the spring, the spring itself will

not slip off the bulb. However, there is nothing in the patent in suit to lead one to suppose that the slipping on and off of the spring device is a part of the invention. Suppose, for example, a device was made precisely like the diagram except that the "free ends, 4," on either side of the neck of the bulb, were joined together by clamps; could a suit for infringement be avoided? Clearly not; the claims would cover the device perfectly, and the chief purpose of the patent (lines 10–12) would be embodied—i. e., "to provide a simple and convenient removable cap for the ordinary incandescent lamp, so that caps of any desired colors may be used"—because that purpose is accomplished if the caps will freely slip off the springs. Perhaps the removability of the spring itself may be an added merit, but certainly the patentee has nowhere suggested it as a part of the invention.

The plaintiff raises objection to this anticipating patent upon the theory of its inoperability, basing his position upon the fact that an illustratve model would not operate in court. The arms, D, D, of the model were not made, as required, of "spring wire," but of rather stiff metal strips. Even so the demonstration was not carried out, and there is no testimony that the device will not work. That it will hold on the cap under all circumstances does not follow, any more than that the plaintiff's device will; but it is not necessary that either of them shall always hold in order to be operative. There is not the slightest reason to doubt that Bilheller's patent will work just as he says. As it stands it certainly infringes claims 1 and 2 quite as much as the defendant's hood, and it therefore necessarily forbids the desired interpretation of those claims. The only differentiation between the defendant and Bilheller rests in the slipping on and off of the spring, which, as I have shown, is no part of the patent, unless it is made over.

This patent in suit is in no sense a pioneer patent; it embodies no new principle; it makes no radically new combination; it is an especial and limited adaptation of something already known. Its success seems to have been substantial since 1909, but apparently not before. The electric sign with colored lights was known as early as 1900, and there was a demand for the invention as early as the filing of the application in January, 1903. If the patent had been a pre-eminently satisfactory answer, it is hard to see why it should have hung fire for six years. The facts suggest some adventitious reason for its subsequent success, such as capable business promotion, rather than any great inherent value in the invention. I cannot necessarily attribute the falling off in sales to the competition of the defendant, except that perhaps the short cap was inevitably doomed to a limited place as against the "hood." The supposed advantage of the short cap, which the patentee, both in his specifications and his file wrapper, so much emphasizes, turns out to be equivocal, and it may well be that it is, as the defendant insists, no advantage at all, but the opposite. In any event, the evidence of commercial use seems to be ambiguous, and I cannot look upon the patent as filling a long-felt want.

Bill dismissed for noninfringement.

D. W. Cooper, of New York City, for appellant.
J. R. Taylor, of New York City, for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The object of the invention, as stated in the specifications, is to "provide a simple and convenient removable cap for ordinary incandescent lamp, so that caps of any desired colors may be used."

Without discussing the question of patentable invention we fully concur with Judge Hand in the conclusion that infringement is not shown.

This is no pioneer patent; it presents no feature which calls for extreme liberality in broadening its claims.

Each of the claims, those in suit as well as those not sued on, in-cludes the cap as an element: Claim 1 "a cap covering the tip end of" an incandescent lamp; claim 2 "a cap fitted to the tip end of the lamp"; claim 3 "a cap fitted to the tip end of the lamp, the free edge of said cap standing intermediate of the largest diameter of the lamp and its tip"; claim 4 "a cap fitted to the tip end of the lamp." Where the patentee has been so particular to confine the fitting of his cap, not merely to the "end" of the lamp, but specially to the "tip end," it is difficult to see how his claims can be expanded so as to cover a hood which covers practically the whole lamp. This conclusion is strength-ened by the specification, which states that the cap is shaped to fit over the tip end of the lamp bulb, and adds:

"By having the cap cover only the tip end of the lamp the bulb intermedi-ate of the cap and base is uncovered, so as to throw unobstructed rays against the display surface on which the lamps are secured."

As defendant's so-called "hood" covers practically the whole lamp bulb, there is no infringement.

The decree is affirmed, with costs.